James D. STEWART, Trustee-Appellee,

v.

Elma H. JONES, Debtor-Appellant.

James D. STEWART, Trustee-Appellee,

v.

Robert Wilson McCULLOUGH and Doris Earline McCullough, Debtor-Appellants.

Civ. A. Nos. 83–0888–H–B, 83–0039–H.

Bankruptcy Nos. 82–00383, 82–00472.

United States District Court,
S.D. Alabama, S.D.

Nov. 29, 1983.

Ross M. Dolloff, Selma, Ala., for debtor-appellant.

James D. Stewart, pro se.

Before HAND, C.J., and EMMETT RIPLEY COX, DANIEL HOLCOMBE THOMAS and PITTMAN, JJ.

## ORDER ON BANKRUPTCY APPEAL

HAND, Chief Judge.

These cases came on before the Court pursuant to appeals by the respective appellant-debtors from orders of the Bankruptcy Court entered on July 20, 1982 in *Stewart v. Jones,* Bankruptcy Case No. 82–00383, and on December 6, 1982, in *Stewart v. McCullough,* Bankruptcy Case No. 82–000472. The cases were consolidated on appeal by prior order of the Court.[1] No oral arguments were heard.

The sole question on appeal is whether the Bankruptcy Judge erred in holding that Code of Alabama 1975, Section 6–10–126[2]

1. Both appellants are represented by the same attorney, and filed identical briefs. The Trustee, who is also the same for both cases, failed to file a brief.

2. Section 6–10–126, entitled "Exceptions", provides as follows:

does not create personal exemptions separate from and in addition to those established in Code of Alabama, 1975, Section 6–10–6 [3]. This Court is of the opinion that the Bankruptcy Judge's holding in both cases is correct. We therefore affirm.[4]

## I

By Act No. 80–569, effective May 19, 1980, the Legislature of the State of Alabama, acting under the authority of Section 522(b)(1) of the Bankruptcy Code, prohibited the application of the federal exemptions established by Section 522(d) of the Bankruptcy Code, and limited exemptions allowable to Alabama residents to those established by state law, or by law other than Section 522(d) of the Bankruptcy Code. Alabama law currently provides for a personalty exemption in the amount of $3,000.00, Code of Alabama, 1975, Section 6–10–6; a homestead exemption of $5,000.00, Code of Alabama, 1975, Section 6–10–2; a seventy-five percent wage exemption, Code of Alabama, 1975, Section 6–10–7; [5] and several other exemptions not relevant to this appeal.

As noted above, in these cases both debtors claim that Section 6–10–126 creates personalty exemptions independent of and in addition to the personalty exemption set forth in Section 6–10–6. Both appellant-debtors in their respective Schedule B–4 forms claim certain personal property as exemptions under Section 6–10–126. In both cases the Trustee objected to these claims, and in both cases the Bankruptcy Judge sustained the objections. In *Jones, supra,* the Bankruptcy Judge held, "Section 6–10–126 merely voids any *waiver* of exemption (of the type listed) *in a written instrument.* The limitations on the amount of the personal property exemption as set out in Section 6–10–6 still apply." (Order at 5) (emphasis in original). The same Bankruptcy Judge held in *McCullough, supra,* that:

Section 6–10–126, Code of Alabama (1975), relied upon by the Debtors in asserting a claim of exemptions in personal property exceeding the $1,000.00 limitation [of 6–10–6 before amendment], is inappropriate. That section relates to property protected from levy of execution

---

(a) No waiver of exemptions in any written instrument shall be held to apply to or include or authorize the levy of an execution or attachment on any of the following property for any debt contracted:

    (1) Cooking utensils, cooking stoves, table, tablewear, chairs, bed and bed clothing in actual use by the family;

    (2) Wearing apparel;

    (3) A vehicle used by an essential to the debtor's business;

    (4) Tools used personally by and essential to the debtor's business;

    (5) The library of the debtor.

(b) Any levy upon such property is absolutely void.

**3.** Section 6–10–6, entitled "Personalty", provides as follows:

The personal property of such resident, to the amount of $3,000.00 in value, to be selected by him or her, and, in addition thereto, all necessary and proper wearing apparel for himself or herself and family, all family portraits or pictures and all books used in the family shall also be exempt from levy and sale under execution or other process for the collection of debts.

**4.** At the outset it should be noted that the Bankruptcy Courts of this state have split on this issue. The Bankruptcy Court of the Mid-

dle District has ruled that Section 6–10–126 does create separate exemptions not limited by Section 6–10–6. *In re: Satterwhite,* 28 B.R. 178 (Bkrtcy.M.D.Ala.1983). The Bankruptcy Courts in this District and in the Northern District have held that Section 6–10–126 does not create separate and additional exemptions. For the Northern District decisions, see *Matter of Sanders,* 30 B.R. 80 (Bkrtcy.N.D.Ala.1983) and *Matter of Morris,* 30 B.R. 392 (Bkrtcy.N.D. Ala.1983). The decisions in the reported cases apparently have not been appealed to a district court; and this is the first occasion that this question has been considered on appeal.

Finally, the question in this case was certified to the Alabama Supreme Court, apparently in the *Satterwhite case,* supra. On February 22, 1983, the Alabama Supreme Court declined to answer the question. Letter from counsel for appellant-debtor, dated March 7, 1983, in *Jones,* supra.

**5.** In the case of *In re: Wilkens,* Civil Action No. 82–0937 (June 23, 1983) (unpublished), this Court held a Chapter 7 debtor is, under Alabama law, entitled to a seventy-five percent wage exemption as a separate and independent exemption.

or attachment under a debtor's waiver of exemptions as to personal property. No waiver of exemptions is involved here and that section does not enlarge the personal property exemptions established by Section 6–10–6.

(Order at 6).

■ This Court has jurisdiction over appeals from the Bankruptcy Court. Bankruptcy Rule 802(a), Title 11 U.S.C. Where, as here, the Bankruptcy Judge's findings of fact are not in dispute, and the questions presented are solely legal ones, no presumption of correctness applies, and the district court should make an independent determination of the legal issues involved. *Matter of Hammons,* 614 F.2d 399, 403 (5th Cir. 1980).

## II

Appellants urge three arguments on behalf of their contention that Section 6–10–126 creates personal property exemptions distinct from and in addition to those provided under Section 6–10–6. First, they argue that a statutory analysis of the language of Section 6–10–126 clearly indicates the Alabama Legislature intended that the statute be a separate and additional exemption statute. Second, they similarly assert that a history of the statute proves it was meant to be a kind of super exemption statute. Third, they claim that the only case which directly interprets Section 6–10–126, *Coffman v. Folds,* 216 Ala. 133, 112 So. 911 (1927), shows Section 6–10–126 is an exemption statute. The Court finds none of these arguments has merit.

### A. Statutory Interpretation.

■ Appellants first assert that the plain language of Section 6–10–126 clearly indicates that it was intended to be a separate exemption statute. They correctly state that legislative intend is to be determined primarily "from the language of the statute itself," citing *Fletcher v. Tuscaloosa Federal Savings & Loan,* 294 Ala. 173, 314 So.2d 51, 53 (1975); and where the language of the statute is unambiguous, the expressed intent must be given effect as meaning exactly what it says. *Kimbrell v. State,* 272 Ala. 419, 132 So.2d 132, 137 (1961).

Appellants then break Section 6–10–126 into its component parts: (a) and (b), and thereafter rely almost solely on the language of sub-section (b): "Any levy upon such property is absolutely void." See Notes 3 and 4, *supra* at 2. From this language they assert that all the property enumerated in Section 6–10–126(a)(1) through (5) may not be levied against or executed upon. This analysis is flawed.

■ "In determining the legislative intend behind a statute, the statute must be interpreted as a whole, and if possible, every section should be given effect." *Sparks v. Calhoun County,* 415 So.2d 1104, 1105 (Ala.Civ.App.1982), *cert. denied,* Al.Sup.Ct., Case No. 81–747, July 2, 1982. Indeed, wherever possible, every *word* should be given effect. *McWhorter v. State Bd. of Registration, Etc.,* 359 So.2d 769, 771, *rehearing denied,* (Ala.1978).

A closer analysis of Section 6–10–126(b) indicates its extremely narrow coverage. First, the sub-section as noted above states: "Any levy upon *such property* is absolutely void." (emphasis added). "Such property" refers to and is defined by Section 6–10–126(a). The introductory sentence of (a) states: "No waiver of exemption in any written instrument shall be held to apply to or include or authorize the levy of an execution or attachment on any of the following property for any debt contracted . . . ." Thereafter the sub-section lists five classes of personal property. In interpreting the statute, appellants fail to give any effect whatsoever to the introductory sentence.[6] When effect is given to the introductory sentence the statute clearly indicates that

---

6. When interpreting a statute, a court "must look to the entire Act instead of isolated phrases or clauses . . . Moreover, just as statutes dealing with the same subject are in *pari materia* and should be construed together . . . parts of the same statute are in pari materia and each part is entitled to equal weight." *Darks Dairy, Inc. v. Ala. Dairy Com'n,* 367 So.2d 1378, 1380–81 (Ala.1979); and Sparks, supra.

where a debtor has given a waiver of exemption involving any of the five classes of property, any attempt to levy upon such property is therefore, absolutely void. By its terms the statute relates only to situations where the debtor has granted a waiver of exemption, and is not an exemption statute.

Appellants contend that an interpretation holding that the monetary limitations of Section 6–10–6 limits any claims of exemptions for the five classes of property set out in Section 6–10–126(a) creates conflict with the plain language of Section 6–10–126. Such conflict is to be avoided in statutory construction. *B.F. Goodrich v. Butler,* 56 Ala.App. 635, 324 So.2d 776 (1975); *State v. Community Blood & Plasma Service, Inc.,* 48 Ala.App. 658, 267 So.2d 176 (1972).

The Court sees no conflict in such an interpretation. Section 6–10–6 provides for the exemption of $3,000.00 worth of personalty from levy and execution and leaves the selection of what property is to be exempted up to the debtor. Section 6–10–126 aids and protects the debtor's selection by providing that certain items of necessity cannot be executed or levied upon, even in the face of a waiver of exemptions, until the debtor has had the opportunity to exercise the right of selection established by Section 6–10–6.

A comparison of Section 6–10–6 and Section 6–10–126 reveals that "both sections list wearing apparel and the family library as property affected by each statute. If 6–10–126 were intended as an additional statutory exemption of personalty, the inclusion of these two items of property would be redundant." *Matter of Morris, supra,* 30 B.R. at 394. There is a presumption "that the legislature does not enact a meaningless, vain or futile statutes." *Druid City Hospital Bd. v. Epperson,* 378 So.2d 696, 699 (Ala.1979). The statutes would therefore seem to have separate purposes. Section 6–10–6 allows a debtor to claim wearing apparel and the family library as exempt, and does not require that such property be included within the monetary limits of the statute. Section 6–10–126 protects the same property from a waiver of exemption. An interpretation holding that Section 6–10–126 was a separate exemption statute would render portions of Section 6–10–6 redundant, even superfluous.

Accordingly, this Court concludes that an interpretation of the language of the two statutes indicates that Section 6–10–126 was not intended to be a separate exemption statute.

### B. Statutory History

Appellants argue that the statutory history of Sections 6–10–6 and 6–10–126 provide evidence indicating that the legislature intended that Section 6–10–126 be a kind of "super exemption" statute. The Court, after reviewing the history of these two statutes, finds no merit in that argument. The Court concludes that the statutory history provides little insight into legislative intent. What little evidence exists indicates a change in legislative policy in 1876, one which appears to be contrary to the policy which the debtors ask this Court to adopt.

An exemption statute existed as early as 1852. Code of Alabama, 1851, Section 2462 provided:

Section 2462. The following property may be permanently retained for the use of every family in the state, exempt from levy and sale by any legal process:

1. Household and kitchen furniture of the value of one hundred and fifty dollars to be selected by the head of the family, the value thereof to be assessed by three disinterested persons, to be selected by the sheriff.

2. All books not kept for sale, all family portraits, one gun, one loom, two spinning wheels, one man's and one woman's saddle.

3. Three cows and calves, twenty head of sheep, twenty head of hogs, five hundred pounds of meat, one thousand pounds of fodder, twenty-five bushels of wheat, all the meal at any time on hand not kept for sale, one work horse or mule, or one pair of oxen, one horse or ox cart, all tools or implements of any mechanical

trade not kept for sale, not to exceed two hundred dollars in value, two plows and plow gear, and two hoes . . .

Besides the laundry list character of the statute, perhaps its most significant factor was that such personalty was to be *permanently* retained for the use of every family.

Fifteen years later, the 1867 code contained two exemption statutes relating to personalty. Section 2880 was in form virtually the same as the 1852 laundry list statute, except that in the interim the legislature had amended the statute to include additional items of personalty. Section 2884 included a provision allowing families to retain twelve hundred dollars worth of real estate and one thousand dollars worth of personal property.

In 1876 Alabama dramatically altered public policy on exemptions. The Constitution of Alabama was amended to allow for a personal property exemption of $1,000.00. (Article X, § 1) The Constitution was also amended to include for the first time the right to waive exemptions. (Article X, § 7) Enabling statutes were also passed. Code of Alabama, 1876, Section 2820 provided in part that: "The personal property of any resident of the state to the amount of one thousand dollars, *to be selected by such resident*" was to be exempt from levy and execution. (emphasis added) Section 2823 provides for additional exemptions during the life of the owner. Those exemptions in relevant part included "all necessary and proper wearing apparel for each member of the family, and all family portraits, and books used in the family. . . ." The significance of the wording of these two statutes indicates that the legislature had begun to abandon the laundry list approach of items permanently preserved for the family against levy and execution in favor of a debtor's choice of what personalty he or she would choose to exempt from levy or execution.

Sections 2820 and 2823 of the 1876 Code, *supra,* were consolidated under Code of Ala-

bama, 1887, Section 2511. That statute allowed an Alabama resident to exempt from levy or sale of execution "personal property of such resident to the amount of one thousand dollars in value, to be selected by him, and, in addition thereto, all necessary and proper wearing apparel for himself and family, and all family portraits or pictures, and all books used in the family. . . ." The wording contained in that statute has remained virtually unchanged for nearly a century, and is presently contained in Code of Alabama, 1975, Section 6–10–6.[7] The 1887 Code also contained Section 2567, which stated, "any person, by an instrument in writing, may waive his right to an exemption in any property exempt from levy and sale under execution or other process."

An examination of the 1897 code compilation indicates that there were no changes in either the exemption statute relating to personalty or the waiver of exemption statute. The 1907 Code contained no changes in the exemption of personalty statute; however, a significant change was made to the waiver of exemption statutes. The right to waive an exemption was still included in the Constitution and in an enabling statute. Code of Alabama, 1907, Section 4231. A new provision had also been added pertaining to the waiver of exemptions. Section 4237, entitled "Exception to Waiver" provided:

No waiver of exemption in any written instrument shall be held to apply to or include or authorize the levy of an execution or attachment on any of the following articles: Cooking utensils, cooking stoves, table, table wear, chairs, beds and bed clothing in actual use by the family, wearing apparel, meat not exceeding one hundred pounds, lard not exceeding fifty pounds, meal and flour not exceeding ten bushels, or if no meal or flour, corn or wheat not exceeding ten bushels, ten bushels of Irish or sweet potatoes, and ten gallons of syrup, to be selected by the

7. The only significant change in the statute has been that the $1,000.00 limitation was recently changed to $3,000.00.

debtor, for any debt contracted after the adoption of this Code.

The purpose of the exception to waiver statute appears to be to protect the debtor's choice under the exemption statute, and not to create a separate exemption statute. See discussion, *infra* at II C.

The Code of Alabama, 1923, indicates no changes were made between 1907 and 1923 in the exemption statute; however, two changes had been made in the exception to waiver of exemptions statute. One amendment had been made to the list of personalty which could not be waived: "one cow and calf." Section 7966. Importantly, the section had also been amended in 1915 to include the following phrase, "and any levy upon such property is void." Appellants argue that the amendments to the exception waiver of exemptions statute indicates the legislature's intent to return to the laundry list approach of the pre-1876 statutes, especially the inclusion of the phrase: "any levy upon such property is void." They argue that the personalty items listed in Section 7966 had previously been included in the exemption statute, and were included in the exceptions to waiver statute in order to further protect the debtor's personal property, and get around the constitutional right to waive exemptions.

This argument does not stand scrutiny. The exemptions statute itself as noted, *supra,* currently contains several items which may not be levied upon, and which can be claimed outside of the monetary limit of Section 6–10–6 and its predecessor statutes. If the legislature had specifically wanted to allow exemptions for other items, particularly the ones listed in the exceptions to waiver statute, it could have placed them in the exemption statute. Its failure to do so would seem to indicate that the legislature had something else in mind, the most obvious of which would be to preserve these items of personalty for selection by the debtor under the monetary limits of the exemption statute and not make them subject to monetary limits despite a waiver. See discussion *infra* at II C. Such an interpretation would comport with the legislature's earlier decision to abandon the laundry list approach and allow the debtor to select for exemption those items of his or her choice, limited by the $1,000.00 ceiling.

Thereafter, both the exemption statute and the waiver of exemption statutes remained unchanged until the present time. The exception to waiver statute, except for grammatical restructuring and deletion of some items and inclusion of new items, remained unchanged after 1915.

After reviewing the statutory history of Section 6–10–6 and Section 6–10–126, the Court is unpersuaded that Section 6–10–126 was meant to provide exemptions separate from and in addition to those provided under Section 6–10–6. An overview of the history seems to indicate that prior to 1876 the legislature had a policy of permanently exempting a laundry list of items important for the well being of the debtor and his or her family. After 1876 the legislature created a monetary limit over a debtor's exemptions, and allowed the debtor to select the property that he or she considered most important. The exception to waiver statute appears to be an aid to the debtor's right of selection.

C. The *Coffman* Case.

Appellants also point to *Coffman v. Folds,* 216 Ala. 133, 112 So. 911 (1927), the only case construing the effect of what is now Section 6–10–126, as being further evidence that the statute creates a separate set of exemptions. The Bankruptcy Judge's decisions in the cases *sub judice* and in *Matter of Morris, supra,* 30 B.R. at 394, cite the same case for the proposition that Section 6–10–126 does not create a separate set of exemptions. It appears to this Court that the appellants have misread *Coffman.*

The general issue in the *Coffman* case involved the question of whether a trustee in bankruptcy had "... title and right of maintenance of the suit for damages for the 'wrongful taking of a milk cow which was the only milk cow the plaintiff had....'" *Coffman* at 912. In determining whether such an action could be maintained, it became necessary to determine which one of

two statutes applied: Section 4237 of the Code of 1907 which did *not* contain the phrase "any levy on such property is absolutely void," or a 1923 statute, which had been amended to contain the phrase. In discussing the different effects of the two statutes the Alabama Supreme Court stated:

> When therefore the levy was made it was not "absolutely void" as in section 7966, Code of 1923, but was subject to avoidance as against the collection of the class of debts created since the approval of the act on September 28, 1915, by the fact of "selection by the debtor" in the informal way we have indicated and dependent upon the state of use, condition, bulk number, character, or kind of property selected by the debtor. Thus under the law of 1915 active duties of notice as to such property were imposed upon the debtor ... while under the 1923 statute the law further protected the debtor in the declared effect and effort of his *required selection by declaring any levy upon such property as absolutely void* from and at the time of the levy, *if it be selected by the debtor.* (emphasis added).

*Coffman* at 913.

Thus, under both the 1915 and the 1923 statute, the property in question had to be *selected by the debtor* in order for it to be exempted. The purpose of the statute does not appear to be to create new classes of exemptions, but rather to protect the debtor's right to exemptions until he or she has had the opportunity to select such property. The later statute, the one containing the phrase "any levy upon such property is absolutely void" aids the debtor by not forcing him or her to go through the process of levy and execution before being able to select the property. As the Alabama Supreme Court stated, the purpose of the exception to waiver statute was "to aid the poor and ignorant and guard such persons and their

families from the oppression or inconvenience incident to the delay and uncertainty of making a formal claim of exemptions as is required of the other class of exemptions." [8]

Further support from the *Coffman* court as to the limited nature of the holding in that case relates to its discussion of *Levens v. State,* 3 Ala. 428, 57 So. 497 (1912). That case involved a situation where a debtor resisted a sheriff's attempt to levy on certain items of personalty. The debtor claimed that the sheriff had already " ... levied on 'fifty fold' more than was necessary to satisfy the attachment, and that he did not allow them to take the 'last bit of bread from his family'. . . . " *Levens* at 497. Thereafter several shots were fired and Levens was arrested and indicted for assault with intent to murder and was found guilty. The conviction was reversed and remanded, the *Levens* court holding that if the items upon which the officers were attempting to levy were exempt, then Levens had the right to resist arrest to protect his property. *Id.* at 498–99.

Thus when the *Coffman* court discusses the *Levens* case, it seems to be indicating that the purpose of the "absolutely void" provision of the 1915 statute was to avoid *Levens* type situations by making any attempt to levy on items enumerated under the exception to waiver statute void if the debtor claims them. This protection would have the effect of protecting a debtor by not forcing him or her to go to court to get back specially protected exemptable items which had been executed upon before the debtor had the opportunity to select them.

The Alabama Supreme Court throughout *Coffman* speaks solely to the question of whether or not a debtor must make a formal selection of the classes of personalty listed under the statutory predecessor to Section 6–10–126. Nowhere does it specifically state that the personalty listed in that

---

8. Appellants would claim that the Court's language in which it refers to other classes of exemptions "indicates that Section 6–10–126 was intended to be an exemption statute." This Court believes that this language merely indicates that the legislature intended the selec-

tion process for personalty exemptions to be less formal than those of other types of nonpersonal exemptions. In particular see the requirements for a homestead exemption. Code of Alabama, 1975, Section 6–10–2 and related statutes.

statute should constitute a separate set of exemptions, nor that they are not subject to the monetary limitations of the statutory predecessor of Section 6–10–6.[9] Rather a careful reading of *Coffman* indicates that the sole question was whether or not the personalty under question (a milk cow) had been properly selected by the debtor and whether it was eligible for selection. *Coffman* merely stands for the proposition that under Section 6–10–126's predecessor, the debtor need not formally claim certain classes of property. That interpretation is supported by two State Court opinions dealing with the wage exemption contained in Section 6–10–6. *See Holley v. Crow,* 355 So.2d 1123 (Ala.Civ.App.1978) and *Walker v. Williams & Bouler Construction Company,* [46 Ala.App. 337] 241 So.2d 896 (1970). Both of these cases stand for the proposition that once the 75% wage exemption is claimed, the remaining 25% cannot be exempted if there exists other personal property of the debtor which satisfies the $3,000.00 limit contained in Section 6–10–6. The debtor does not have to make a formal claim as to the property set out in Section 6–10–126. As a result, if the section were to be viewed as an independent exemption statute it would greatly affect the valuation of a debtor's personalty by setting

out personalty which could not be utilized to compute the $3,000.00 limitation. Since the Court in both cases was concerned with whether the debtor has personalty which exceeded the 75% wage exemption and the $3,000.00, the court finds the absence of a discussion of Section 6–10–126 very significant. As a result, Section 6–10–126 is not to be viewed as an exemption statute, but merely a statutory limitation on the remedy available to creditors who hold a waiver of personal property exemptions executed by the debtor.

*Matter of Morris, supra,* 30 B.R. at 394.[10]

### III

 Based upon the above discussion, this Court concludes that Section 6–10–126 is not a separate exemption statute. Accordingly, this Court will this same day by separate document enter judgment on behalf of the Trustee and against the appellant-debtors.

---

**9.** It should be remembered that the monetary limit of the statutory predecessor to Section 6–10–6 was then $1,000.00, a rather substantial amount of personal property at the turn of the century.

**10.** This Court's conclusion appears to be supported by *Sterling v. Colvard,* 284 Ala. 378, 225 So.2d 790 (1969). Although that case deals primarily with the question of remedies where an allegedly improper judicial sale of personal property has taken place, it also tangentially sheds light upon the application of Section 6–10–126. In Sterling v. Colvard the sheriff levied execution upon and sold all of plaintiff's household furniture and goods, which were at the time stored in a warehouse. *Id.* at 791. The plaintiff's attorney gave notice to the sheriff that said goods were exempt from levy and sale, "but the sheriff failed and refused to release said levy whereby plaintiffs were deprived of household furniture and goods...." *Id.*

On appeal, the plaintiffs relied upon "§ 712, Title 7, wherein the legislature had declared that no waiver of exemptions in any written

instrument shall authorize the levy of execution on cooking utensils, cooking stoves, table, tableware, china, bed and bedclothing in actual use by the family wearing and other specified items. The statute declares that "... any levy upon such property is absolutely void." (Citations omitted). *Id.*

The plaintiffs had originally litigated this issue in a different case, and the trial court ruled against them. No appeal was taken, and the Alabama Supreme Court held that judgment "was conclusive on the instant plaintiffs as well as the plaintiffs in exemption and the sheriff." *Id.* at 792.

Although the appellate court did not reach the issue, apparently the trial court in the other case did. If the appellant-debtors in the case at bar are correct, and Section 6–10–126 is a separate exemption statute declaring seizure and sale of the specified items as *void* (rather than voidable), then the trial court should have upheld the exemption claim. It clearly did not do so.